UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| North Memorial Health Care, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| National Mediation Board, and Office and Professional Employees International Union, | |
| Defendants. | |

Plaintiff North Memorial Health Care ("Plaintiff"), as and for its Complaint against Defendants National Mediation Board ("NMB") and Office and Professional Employees International Union ("OPEIU" and, together with NMB, "Defendants"), states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a non-profit corporation organized under Minnesota law and headquartered in Minnesota.

2. NMB is a federal government agency governed by the Railway Labor Act, 45 U.S.C. §§ 155-188 ("RLA").

3. OPEIU is a labor union headquartered in New York.

4. This Court has federal question jurisdiction over this matter due to Plaintiff's challenge of the NMB's purported exercise of jurisdiction over Plaintiff under the RLA.

1

5.      Venue is proper in this Court because Plaintiff resides in Minnesota and the cause of action arose in Minnesota.

## FACTUAL BACKGROUND

**I.      Plaintiff and its Medical Transportation Services.**

6.      Plaintiff is a large health care network that operates hospitals and 25 clinics, including primary care clinics, urgent care clinics, and urgency centers. Plaintiff employs more than 6,000 employees. The vast majority of its 6,000 employees perform work in its hospitals and clinics.

7.      As part of its health care network and the provision of medical services, Plaintiff also operates a medical transportation service in which Plaintiff provides medical transportation services by wheelchair vans, ambulances, and helicopters. The helicopter subset of Plaintiff's medical transportation services is referred to as "Air Care."

8.      Employees who provide Air Care transportation services include nurses, paramedics, maintenance staff, twenty-seven pilots, and several management level employees. Additionally, the medical transportation services team as a whole is supported by dispatchers and billing employees.

9.      Nurses involved in transportation services (including the Air Care transportation services) are members of the Minnesota Nurses Association ("MNA"), a union organized under the National Labor Relations Act (not the RLA), and are covered by a Contract Agreement between Plaintiff and MNA. These nurses provide patient care while in transit.

10. Additionally, billing employees and dispatchers who support the transportation services (including the Air Care transportation services) are members of the Service Employees International Union ("SEIU"), a union organized under the NLRA, and are covered by a Contract Agreement between Plaintiff and SEIU.

11. The medical transportation employees performing Air Care services provide air transport services to patients in need. Flights transporting patients comprise approximately 90 percent of all flights. The interstate portion of these flights make up a small fraction of the total flights. These flights are part of patients' medical care and are billed like other medical services.

12. The remaining ten percent of flights include pilot training flights and "ferry flights," which are non-patient flights to move a helicopter from one base to another. Nearly all of these pilot training flights and ferry flights are intrastate.

13. As a general rule, Air Care flights are staffed with one pilot, one nurse, and one paramedic. All such individuals are employed by Plaintiff. Neither Plaintiff nor its employees are controlled by, affiliated with, or party to any contract with, any airline or other entity covered by the RLA. Plaintiff does not carry or transport U.S. Mail. Plaintiff's air fleet currently consists of nine helicopters that are shared across its bases.

14. The Air Care subset of Plaintiff's medical transportation services account for an insubstantial amount of Plaintiff's overall operations and revenue. The Air Care operations account for approximately three percent (3%) of Plaintiff's total revenue. Plaintiff's Air Care services, while important, are a negligible part of Plaintiff's principal business operations, which include provision of healthcare services to patients at the

Plaintiff's hospitals, primary care clinics, urgent care clinics, and urgency centers, as well as other related transportation services (such as ambulances and wheelchair vans).

## II. OPEIU's Application to the NMB.

15. On April 25, 2022, OPEIU submitted an application to the NMB to resolve a representation question involving certain employee pilots (the "Pilots") of Plaintiff. OPEIU sought for the NMB to conduct and certify an election.

16. NMB is a federal government agency created by the RLA to resolve disputes between employees and "common carriers," including air carriers, regarding "changes in rates of pay, rules, or working conditions not adjusted by the parties in conference." 45 U.S.C. § 183.

17. The RLA covers "every common carrier by air engaged in interstate or foreign commerce… and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers…." 45 U.S.C. § 181; 45 U.S.C. § 155.

18. In its Initial Position Statement and Responsive Position Statement filed with the NMB on May 24, and June 17, 2022, Plaintiff objected to the NMB's jurisdiction and requested that OPEIU's Application be dismissed for lack of jurisdiction. Among other things, Plaintiff argued that it was not a "carrier" under the RLA and that its interstate air operations were *de minimis*, therefore rendering the RLA inapplicable.

19. On October 18, 2022, the NMB issued a decision concluding that it had jurisdiction over the dispute. More specifically, the NMB concluded that Plaintiff was a "common carrier" subject to the RLA.

20. On October 20, 2022, Plaintiff filed a motion for reconsideration and argued again that the NMB lacked jurisdiction over the dispute.

21. On November 3, 2022, the NMB issued a decision denying Plaintiff's motion for reconsideration.

22. Following the NMB's purported exercise of jurisdiction, the NMB purported to conduct an election. On December 15, 2022, NMB purported to certify the election of OPEIU as the representative of the Pilots. In so doing, NMB again concluded that Plaintiff was a "common carrier" within the meaning of the RLA and that NMB had jurisdiction over the dispute.

23. On January 13, 2023, OPEIU sent a Notice to Bargain and a Request for Information to Plaintiff, seeking to conduct direct bargaining with Plaintiff.

24. Plaintiff maintains that it is not subject to the RLA and that the NMB did not have jurisdiction over Plaintiff, meaning that the purported "election" and "certification" were void and without any legal effect, and now asks this Court to declare the same.

## COUNT I: DECLARATORY JUDGMENT

25. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

26. The RLA applies to "every common carrier by air engaged in interstate or foreign commerce… and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers…." 45 U.S.C. § 181; 45 U.S.C. § 155.  The NMB only has jurisdiction over labor disputes subject to the RLA. 45 U.S.C. § 183; 45 U.S.C. § 155.

27. OPEIU requested that the NMB resolve a representation question between Plaintiff and certain of its employees. Plaintiff objected on the basis of lack of jurisdiction multiple times throughout the NMB proceeding. Nevertheless, the NMB purported to exercise jurisdiction and to conduct and certify an election.

28. Plaintiff is not a "common carrier" covered under the RLA. Plaintiff is a healthcare system, and the function of the limited subset of its medical transportation services known as "Air Care" is in furtherance of Plaintiff's healthcare objectives.

29. Indeed, numerous courts have recognized that Plaintiff is a healthcare provider in the context of applying the NLRA, as has the NLRB itself. See, e.g., N. Mem'l Health Care v. NLRB, 860 F. 3d 639 (8th Cir. 2017); Minnesota Nurses Ass'n v. N. Mem'l Health Care, 822 F.3d 414 (8th Cir. 2016); N. Mem'l Med. Ctr., 224 NLRB 218 (1976).

30. Alternatively, Plaintiff is not subject to the RLA because its interstate air operations are *de minimis*.

31. Further, the nurses on the Air Care flights are subject to NLRB jurisdiction, as are supporting employees performing dispatching and billing services. As a result, if the NMB maintains jurisdiction over the Pilots, it would lead to the inconsistent result of differing jurisdiction for many employees who work on the same services.

32. Therefore, Plaintiff is entitled to a declaration that Plaintiff is not subject to the RLA, that the NMB did not and does not have jurisdiction over the representation dispute between the Pilots and Plaintiff, and that the purported "election" and "certification" by the NMB are void and without any legal effect.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. A declaration that Plaintiff is not subject to the RLA, that the NMB did not and does not have jurisdiction over the representation dispute between the Pilots and Plaintiff, and that the purported "election" and "certification" by the NMB are void and without any legal effect.

2. Injunctive relief as may be necessary; and

3. For such other and further relief as the Court may deem just and equitable.

Dated: January 25, 2023                **FELHABER LARSON**

By:    /s/Brandon J. Wheeler
Daniel R. Kelly, MN #247674
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
dkelly@felhaber.com
bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF**

3830134.v2